The opinion of the Court was delivered by
Tilghman C. J.
1. The first and principal objection, is to that part of the charge, in which it is said, that “ if the goods were purchased before the blockade, and either deposited in stores, or coming on the road, for the purpose of being shipt, and then notice of the blockade were received, the captain might proceed afterwards to ship them, and sail on his voyage, without being guilty of a breach of blockade.” This was a very material point in the cause ; for, from the *75 evidence, it seems highly probable that at least part of the cargo was shipt, after notice of the blockade.
The right of a belligerent to institute a blockade, is not denied by neutrals, though it bears hard on their commerce. Neutrals have, however, certain acknowledged rights in such cases, and one of them is, that where a neutral ship has entered a port not blockaded, and the master has purchased a cargo and taken it on board, before notice of the blockade, he may sail with his cargo, and pursue his voyage, notwithstanding the blockade. It is contended, on the part of the defendant, that the right of the neutral is more extensive ; and that the same principle which permits him to export a cargo shipt before notice of the blockade, permits him also to export one which was purchased, and deposited in a warehouse, before notice: because, in both cases, he was equally Innocent of an intent to commit a fraud on the rights of the belligerent; he laid out his money, and procured a cargo, at a time, when, for aught he knew, it was lawful to export it. The argument is plausible, — but there are two sides to the question; the belligerent says, in answer, it is true, you may have purchased this cargo innocently, and your not being permitted to export it, may occasion considerable loss. But the permission to export a cargo under any circumstances, during a blockade, is a relaxation of my strict rights, and when I make a relaxation, I may do it, on such terms as will protect me from imposition. The rule is this: the cargo which you have put on board your ship, or even put on board lighters for the purpose of being conveyed to your ship, before notice of the blockade, I consent' that you may export. But I will go no further, because, if neutrals are permitted to enter into proof of having purchased a cargo before notice, the blockade will be frustrated. I depend on your captain, and your crew, and your papers, to prove the time of shipping the cargo; but as to the time of purchase, or depositing in warehouses, it is very easy for you to deceive me. These are the arguments which have been urged for the captors, in Courts of Admiralty; and it will be found, that the rule has been established, in conformity to them. In the case of the Vrow Judith, 1 Rob. 126, it is laid down by the Judge, (Sir William Scott) that “ the utmost which can be allowed to a neutral vessel, is, that having taken on *76 board a cargo, before the blockade begins, she may be at liberty to return with it. But it is a rule which this Court means to apply, that a neutral ship departing, can only take away a cargo, bona fide purchased and delivered, before the commencement of the blockade. If she afterwards takes on board a cargo, it is a fraudulent act, and a violation of the blockade.” Taking the whole sentence into viqlv, it is evident, that by the word delivered, is meant delivered on board. In the case of the Neptunus, 1 Rob. 144, the same Judge says, that the cargo must be shipped, or delivered to the master jor the use of his owner, before the commencement of the blockade. Here the expression delivered, is more vague, and might be understood of a delivery, not on board. In the case of the Juno, 2 Rob. 99, the Judge expresses himself with more certainty: “ a ship that has entered previous to the blockade, may retire in ballast, or, taking a cargo that has been put on board before the blockade.” In the cases which I have cited, although the right of neutrals is defined, yet it does not appear that the causes turned on the point of the cargo being put on board or not, before notice of the blockade. But in a subsequent case, the Rolla, 6 Rob. 371, that very question was brought before the Court, and directly decided. The ship took in her cargo at Monte Video, consisting principally of hides and tallow, after notice of the blockade, but they had been previously purchased, and deposited in a warehouse. Being libelled for breach of blockade, the counsel for the claimants do not seem to have disputed the general rule, but endeavoured to distinguish this from other cases, because, in a hot climate, it was necessary, in order to preserve goods of that kind, to delay the putting them oh board as long as possible. But the Judge refused to recognise the distinction, and declared, that “ he saw no reason for departing from those rules which the Court had felt itself under the necessity of laying down, to prevent the continual danger of being imposed on, by particular evidence, if it was to permit the exemption to be carried further than to a delivery on board the ship, or in lighters.”
These decisions, to be sure, are not authorities obligatory on this Court, but where they are supported by good reason, we receive them as strong evidence of the law of nations. Any man who has been conversant with business in the prive *77 Courts of the Admiralty, must be sensible of the shocking scene of perjury and prevarication, which is there exhibited. There seems reason therefore for establishing a rule, which, though it sometimes bears very hard upon innocent neutrals, appears necessary, in order to prevent that unbounded exportation from blockaded ports which would take place, if neutrals were permitted to export every thing which they had purchased, or even placed in a warehouse, before notice of the blockade. I am therefore of opinion, that there is error, in this part of the charge of the District Court.
2. The second error assigned is, that the Judge charged, “ that there was no violation of the blockade, if the British commodore permitted the brig to proceed on her voyage.” It is said, that the law is laid down too generally. It is difficult for a Judge to specify all the exceptions when he lays down a general rule. To.be sure, a permission obtained by fraud, or falsehood,• would be of no validity. But if the commodore of the blockading squadron, being made fairly acquainted with the circumstances in which a vessel stands, permits her to proceed on her voyage, I should think she ought not to be condemned for breach of blockade, unless indeed it be manifest, that the commodore acted in violation of an order of his sovereign, which ,had been made known to the world.
3. The defendant complains also, that the law was laid down too generally, in saying “ that if the blockade was not preserved with uniformity, a neutral might sail, without being guilty of a .violation of it.” When this cause comes to be tried again, it will be very easy for the District Court to be more particular in charging the jury on.this, and on the second point. There is no necessity for perfect uniformity in maintaining a blockade, because there may be particular reasons for permitting particular vessels to go in, or out. But the blockade should be preserved in so steady a manner, as not to give neutrals just cause for supposing that it is raised. This they must suppose, if ships are capriciously .permitted to enter, or depart. The .neutral certainly goes upon ticklish ground, who ventures to depart, while any of the belligerent ships are in the neighbourhood. AJU that can be said *78 of the law, is, that a neutral ship ought not to be condemned for breach of blockade, if other ships under the same circumstances have been permitted to depart. In the case of the Rolla, cited before, (6 Rob. 327,) the law on this subject will be found fairly laid down. Upon the whole, I am of opinion that judgment in this case should be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.